# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTERMETRO INDUSTRIES CORP., | : | |
| | : | (JUDGE MARIANI) |
| Plaintiff, | : | |
| v. | : | 3:13-CV-02853 |
| | : | |
| CAPSA SOLUTIONS, LLC, | : | |
| | : | |
| Defendant. | : | |
| INTERMETRO INDUSTRIES CORP., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | 3:13-CV-02854 |
| | : | |
| ENOVATE MEDICAL, LLC, | : | |
| | : | |
| Defendant. | : | |
| INTERMETRO INDUSTRIES CORP., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | 3:13-CV-02856 |
| | : | |
| HOWARD INDUSTRIES, INC., | : | |
| d/b/a HOWARD MEDICAL, | : | |
| | : | |
| Defendant. | : | |

## OMNIBUS MEMORANDUM OPINION

I.  **Introduction**

Presently before the Court are three Motions to Dismiss, filed by the above-captioned defendants in their respective cases. This matter arises out of five separately-

filed Complaints from Plaintiff InterMetro Industries, each of which alleges, in nearly identical language, claims for direct, indirect, and willful infringement of six registered patents that the Plaintiff allegedly held.[1] The Defendants' respective Motions to Dismiss likewise raise overlapping issues. In the interests of judicial economy, the Court will therefore treat them together in this Omnibus Opinion. For the reasons discussed below, the Court will grant each Motion.

## II. Factual Allegations

The three complaints[2] allege the following well-pleaded facts.

Plaintiff InterMetro Industries is the owner of U.S. Patent Nos. 6,493,220 ("the '220 patent"), 6,721,178 ("the '178 patent"), 7,612,999 ("the '999 patent"), 7,791,866 ("the '866 patent"), 7,990,691 ("the '691 patent"), 8,526,176 ("the '176 patent"), and others not subject to this lawsuit. (See Capsa Compl., Doc. 1, at ¶¶ 9, 12, 23; Enovate Compl. at ¶¶ 10, 13, 24; Howard Compl. at ¶¶ 8, 11, 22.) These patents embody "point-of-care cart technology" developed over the course of a decade by Intermetro and its predecessors-in-interest. (Capsa Compl. at ¶¶ 10-12; Enovate Compl. at ¶¶ 11-13; Howard Compl. at ¶¶ 9-11.) More

---

[1] One of the five not included in this Opinion, *InterMetro v. Rubbermaid, Inc.*, No. 3:13-CV-02857, was dismissed by stipulation of the parties. (*See* No. 3:13-CV-02857, Doc. 55.) In the other, *InterMetro v. Ergotron, Inc.*, No. 3:13-CV-02855, the only pending motion is a Motion filed by Plaintiff to Dismiss certain of Defendant's Counterclaims. (*See* No. 3:13-CV-02855, Doc. 37.) Because this latter Motion involves different issues than those raised by the above-captioned Defendants' Motions to Dismiss, it is subject to a separate Opinion, which shall be issued in due course.

[2] In this Opinion, all documents will be cited in the following format, to better differentiate the separate cases: "Capsa Compl.," "Enovate Mot. to Dismiss," "Howard Br. in Supp.," etc. "Capsa" refers to case no. 3:13-CV-02853, "Enovate" refers to case no. 3:13-CV-02854, and "Howard" refers to case no. 3:13-CV-02856.

2

specifically, the patented inventions are mobile carts that carry a computer and display screen, primarily for use in medical settings, so that healthcare providers are able to move from patient to patient with full access to electronic files. (*See* Capsa Exs. 1, 3, 5-9; Enovate Exs. 1, 3, 5-9; Howard Exs. 1, 3, 5-9.) When InterMetro's first predecessor-in-interest, nonparty EMS Technologies, Inc., obtained the first patent (the '220 patent), it issued a press release describing the uses of the product and indicating its ownership of the patent. (Capsa Compl. at ¶ 10; Enovate Compl. at ¶ 11; Howard Compl. at ¶ 9.)

InterMetro and its various predecessors-in-interest continued to assert their ownership and prosecute violations of their patents over the years. EMS Technologies first sued a competitor for infringing the '220 patent in 2003. (Capsa Compl. at ¶ 13; Enovate Compl. at ¶ 14; Howard Compl. at ¶ 12.) This led to multiple other "patent infringement lawsuits that resolved on terms which included the infringers paying 'undisclosed amounts' to license the patents, and acknowledging the validity and enforceability of the patents." (Capsa Compl. at ¶ 17; Enovate Compl. at ¶ 18; Howard Compl. at ¶ 16.) Flo Healthcare Solutions, which obtained ownership of the patents from EMS and later assigned them to InterMetro, also sued nonparties Rioux Vision, Inc. and Omnicell, Inc. for infringing the '178 patent in 2006 and 2008, respectively. (Capsa Compl. at ¶¶ 20, 22; Enovate Compl. at ¶¶ 21, 23; Howard Compl. at ¶¶ 19, 21.) InterMetro settled the cases against Rioux Vision and Omnicell in 2010, which included "granting them a license to the patents." (Capsa Compl. at ¶ 25; Enovate Compl. at ¶ 26; Howard Compl. at ¶ 24.)

3

InterMetro further alleges that "[c]ompetitors in the point-of-care-cart market have long been on notice of InterMetro's patents for the point-of-care-cart technology and its intent to enforce these patents." (Capsa Compl. at ¶ 29; Enovate Compl. at ¶ 30; Howard Compl. at ¶ 28.) The first lawsuit initiated by EMS in 2003 was covered in an article published by the Atlanta Business Chronicle, in which an EMS representative stated that, "We are quite determined to enforce our patent rights." (Capsa Compl. at ¶ 14; Enovate at ¶ 15; Howard Compl. at ¶ 13.) EMS further "issu[ed] press release and publish[ed] product brochures with notice of its patents." (Capsa Compl. at ¶ 15; Enovate Compl. at ¶ 16; Howard Compl. at ¶ 14.) EMS also "marked its point-of-care carts with its patent numbers; approached competitors at trade shows to inform them of its patents; and sent letters to competitors offering an opportunity to license its patent rights." (Capsa Compl. at ¶ 16; Enovate Compl. at ¶ 17; Howard Compl. at ¶ 15.) Flo also "sent notice letters to competitors in the point-of-care-cart market" and to a predecessor of Defendant Enovate, which letters included "the related patents and patent applications," offered the opportunity to license the '220 and '178 patents, and "pointed out that other competitors were licensed under the patents." (Capsa Compl. at ¶¶ 18-19; Enovate Compl. at ¶¶ 19-20; Howard Compl. at ¶¶ 17-18.) Finally, "[s]ince the '220 patent issued . . . , InterMetro and its predecessors have continuously marked their point-of-care carts with the '220 patent and related patents." (Capsa Compl. at ¶ 28; Enovate Compl. at ¶ 29; Howard Compl. at ¶ 27.)

4

Nonetheless, InterMetro alleges that the Defendants infringed each of the six named patents. In relatively sparse allegations, it states that the Defendants have been "directly infringing" its patents "by making, using, offering for sale and selling, without InterMetro's authority, computer carts that embody one or more of [each of its patents'] claims," (Capsa Compl. at ¶¶ 33, 50, 68, 84, 102, 122; Enovate Compl. at ¶¶ 34, 50, 70, 85, 100, 120; Howard Compl. at ¶¶ 32, 49, 65, 81, 97, 113), and indirectly infringing the patents by inducing and contributing to other forms of similar infringement, (Capsa Compl. at ¶ 35, 53, 70, 87, 106, 125; Enovate Compl. at ¶¶ 36, 54, 72, 87, 104, 122; Howard Compl. at ¶¶ 34, 51, 67, 83, 99, 115). Moreover, the Defendants advertise each of the offending products by extolling benefits that "could not be realized" without infringing on InterMetro's patent claims. (Capsa Compl. at ¶¶ 39, 58, 74, 92, 112, 130; Enovate Compl. at ¶¶ 39, 60, 75, 90, 110, 125; Howard Compl. at ¶¶ 38, 55, 71, 87, 103, 119.) Indeed, the Defendants' products had no "substantial non-infringing use." (Capsa Compl. at ¶¶ 40, 59, 75, 93, 113, 131; Enovate Compl. at ¶¶ 40, 61, 76, 91, 111, 126; Howard Compl. at ¶¶ 39, 56, 72, 88, 104, 120.) InterMetro further alleges that all such infringements were willful and deliberate. (Capsa Compl. at ¶¶ 42, 61, 77, 95, 115, 133; Enovate Compl. at ¶¶ 42, 63, 78, 93, 113, 128; Howard Compl. at ¶¶ 41, 58, 74, 90, 106, 122.) It seeks equitable and monetary remedies. (See Capsa Compl. at pp. 25-26; Enovate Compl. at pp. 25-27; Howard Compl. at pp. 24-25.)

5

## III. Standard of Review

The Federal Rules of Civil Procedure generally require only that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A pleading that does not so provide is subject to dismissal under Federal Rule 12(b)(6).

The cases *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) lay out the requirements to survive a Rule 12(b)(6) Motion to Dismiss in most civil cases. They require a Complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-1965 (internal citations and alterations omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555, 127 S. Ct. at 1965. A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences

6

that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*Twombly* and *Iqbal* impose on most civil cases a higher pleading standard than simple notice pleading. But they do not apply to all cases. Neither *Twombly* nor *Iqbal* addresses "the sufficiency of a complaint alleging patent infringement or causes of action for which there is a sample complaint in the Appendix of Forms to the Federal Rules of Civil Procedure." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012). In the present case, there is a sample complaint that applies

7

to at least one claim: "Form 18 sets forth a sample complaint for direct patent infringement."

*Id.*

"[T]o the extent . . . that *Twombly* and its progeny conflict with the Forms and create differing pleadings requirements, the Forms control." *Id.* That is because

> Federal Rule of Civil Procedure 84 states that "the forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." Fed. R. Civ. P. 84. The Advisory Committee Notes to the 1946 amendment of Rule 84 states that "[t]he amendment serves to emphasize that the forms contained in the Appendix of Forms are sufficient to withstand attack under the rules under which they are drawn, and that the practitioner using them may rely on them to that extent." *Id.* . . . As the Supreme Court has noted, moreover, any changes to the Federal Rules of Civil Procedure "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993); *see also Twombly*, 550 U.S. at 569 n.14, 127 S. Ct. 1955 (acknowledging that altering the Federal Rules of Civil Procedure cannot be accomplished by judicial interpretation). . . . Thus, whether [a plaintiff's complaint] adequately plead[s] direct infringement is to be measured by the specificity required by Form 18.

*Id.* In this regard,

> as explained by [the Federal Circuit],[3] Form 18 requires:
> 1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent "by making, selling, and using [the device] embodying the patent;" (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

*Id.* (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)).

---

[3] Congress has vested the United States Court of Appeals for the Federal Circuit with exclusive appellate jurisdiction over patent cases. *See* 28 U.S.C. § 1295(a)(1); *Gunn v. Minton*, ___ U.S. ___, 133 S. Ct. 1059, 1067, 185 L. Ed. 2d 72 (2013).

8

Insofar as *Twombly* and *Iqbal* require a Complaint to set out more detailed factual allegations than those required in Form 18, they are accordingly "too stringent" in patent litigation. *Id.* at 1335 (citing *McZeal*, 501 F.3d at 1356-67). "Form 18 and the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met. Indeed, a plaintiff need not even identify which claims it asserts are being infringed." *Id.* (citing *McZeal*, 501 F.3d at 1357).

"That Form 18 would control in the event of a conflict between the form and *Twombly* and *Iqbal* does not suggest, however, that we should seek to create conflict where none exists." *K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed Cir. 2013). The Federal Circuit "think[s] it clear that an implausible claim for patent infringement rightly should be dismissed." *Id.* Nor does Form 18 in any way "relax[] the clear principle of Rule 8, that a potential infringer be placed on notice of what activity or device is being accused of infringement." *Id.*

Finally, if any "complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

9

## IV. Analysis

Capsa, Enovate, and Howard's Motions to Dismiss must be resolved under the above standards. In so resolving them, the Court will divide the Motions according to the issues raised therein.

### a. Enovate

#### i. Direct Infringement

Enovate's Motion argues for dismissal on the ground that InterMetro does not allege that it provided prior notice of direct infringement under the standards set forth in Form 18 as interpreted by *In re Bill of Lading* and *McZeal*, *supra*.

As stated above, the Federal Circuit has held that Form 18 "requires," among other things, that a Complaint contain "a statement that the plaintiff has given the defendant notice of its infringement." *In re Bill of Lading*, 681 F.3d at 1334. InterMetro, however, responds that the Circuit's use of the word "requires" is an "unfortunate" mistake that does not correctly state the applicable law, on the grounds that "notice" is not an element of a patent infringement claim as defined in 35 U.S.C. § 271(a). (*See* Enovate Br. in Opp. to Mot. to Dismiss, Doc. 38, at 7.) In support, it recites a list of district court cases that have declined to impose a notice requirement in patent pleadings. (*See id.* at 8-10.)

The Court is unpersuaded by InterMetro's reasoning. First, a different section of the Patent Statute, 35 U.S.C. § 287(a), does indeed require notice as a precondition to recovering damages for infringement. Second, most of the district courts cases that

10

InterMetro cites were decided before *Bill of Lading* stated Form 18's requirements. They were attempts to interpret the holding of the prior and procedurally less clear *McZeal* case, which was decided in the context of a *pro se* appeal. Though *McZeal* indicated that the five requirements listed on page 8, *supra*, applied to the facts at hand, *Bill of Lading* categorically affirmed that they apply to *all* direct infringement claims. *See Bill of Lading*, 681 F.3d at 1335. Third, even those cases that InterMetro cites that were decided after *Bill of Lading* are unpersuasive to the extent that they differ from that case's holding, as it is the law of the Federal Circuit and not of our sister district courts that applies "with respect to issues of substantive patent law and certain procedural issues related to patent law." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378-79 (Fed. Cir. 2005). Accordingly, this Court cannot disregard *Bill of Lading*'s clear statement of what Form 18 requires. This is especially true given that, in the few short years since *Bill of Lading* was decided, the Federal Circuit has reaffirmed its statement of Form 18's requirements twice. *See K-Tech Telecomm.*, 714 F.3d at 1283; *Superior Indus., LLC v. Thor Global Enters., Ltd.*, 700 F.3d 1287, 1295 (Fed. Cir. 2012).

It is clear that InterMetro's Complaint does not state that it provided Enovate with "notice of infringement" under *Bill of Lading*. The only allegations concerning notice are InterMetro's claims that it "sent notice letters to competitors in the point-of-care-cart market, including . . . Stinger, a predecessor to Enovate Medical." (Enovate Compl. at ¶ 19 (citing Enovate Compl., Exs. 12-13).) However, according to InterMetro's own allegations, the

11

letters only "offered 'an opportunity to license both the '220 and '178 patents,' . . . enclosed copies of the patents, and . . . pointed out that other competitors were licensed under the patents." (*Id.* at ¶ 20.) When accepted as true, these allegations only show "notice of *ownership*;" they do not provide "notice of *infringement*." *Cf., e.g., Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) ("For purposes of section 287(a), notice must be of 'the infringement,' not merely notice of the patent's existence or ownership. Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device.").

It is true that "[f]ailing a showing of actual or constructive notice prior to instituting suit, filing a complaint creates actual notice." *Cybiotronics, Ltd. v. Golden Source Elecs., Ltd.*, 130 F. Supp. 2d 1152, 1160 (C.D. Cal. 2001); *see also* 35 U.S.C. § 287(a) ("Filing of an action for infringement shall constitute such notice."). However, InterMetro's Complaint alleges violations that began on dates well before the Complaint's November 22, 2013 filing fate. (*See* Enovate Compl. at ¶¶ 41 (Count I: "since at least 2005"), 62 (Count II: same), 77 (Count III: "since at least 2009"), 92 (Count IV: "since at least 2010"), 112 (Count V: "since at least 2011"), 127 (Count VI: "since at least 2013"[4]).) Therefore, *Bill of Lading* requires InterMetro to plead that notice of these infringements was provided.

### ii. Indirect Infringement

Finally, at the end of its Brief in Support of its Motion, Enovate briefly argues that

---

[4] Though it is improbable, Count VI could be construed as obliquely stating that notice was provided when this 2013 Complaint was filed.

12

"InterMetro's conclusory allegations of induced and contributory infringement under 35 U.S.C. § 271(b) and (c) cannot rescue the Complaint." (Enovate Br. in Supp. of Mot. to Dismiss, Doc. 36, at 14.) The Court agrees that, to the extent these constitute separate claims, they must also be dismissed. Pleadings containing the "indirect infringement" claims of contributory infringement and induced infringement are analyzed under *Twombly* and *Iqbal*, not Form 18, because "[t]he Forms are controlling only for causes of action for which there are sample pleadings" and Form 18 measures "only the sufficiency of allegations of direct infringement, and not indirect infringement." *Bill of Lading*, 681 F.3d at 1336. Therefore, "we must look to Supreme Court precedent [as discussed above] for guidance regarding the pleading requirements for claims of indirect infringement." *Id.* at 1337.

In the indirect infringement claims, (Enovate Compl. at ¶¶ 36-37, 54-57, 72-73, 87-88, 104-07, 122-23), InterMetro simply recites a series of conclusory statements devoid of "factual allegations [that] raise a right to relief above the speculative level." *Cf. Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. Most of these allegations simply restate the elements of indirect infringement claims; others are conclusions devoid of factual support. (*See, e.g.*, Enovate Compl. at ¶ 37 (". . . Enovate Medical has in the past and/or currently is making, using, offering for sale and selling the Enovate Medical Computer Cart and the Enovate Medical Medication Cart that its customers use to directly infringe at least claims [*sic*] 2 of the '220 patent, among other claims.").) As such, they constitute a classic example of insufficient pleadings under *Twombly* and *Iqbal*.

13

### iii. Conclusion

The Court will therefore dismiss the direct and indirect infringement claims against Defendant Enovate. In so doing, however, it will allow InterMetro leave to amend so that InterMetro may submit an amended complaint that complies with the pleading standards set forth in *Bill of Lading* and *Twombly* and *Iqbal*, as applicable.

### b. Capsa and Howard

Capsa and Howard's Motions mirror each other in all essential respects. They both attack the "willful infringement" claims, which are analytically distinct from the direct and indirect infringement claims discussed above. Thus, Capsa and Howard's Motions argue that InterMetro did not adequately state a claim for willful infringement because it failed to allege (1) the Defendants' respective pre-suit knowledge of the patents at issue or (2) that the Defendants acted with "objective recklessness." (Capsa Br. in Supp. of Mot. to Dismiss, Doc. 34, at 5, 8; Howard Br. in Supp. of Mot. to Dismiss, Doc. 30, at 5, 7.)

The Federal Circuit has defined willful infringement as follows:

> Infringement is willful when the infringer was aware of the asserted patent, but nonetheless "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." After satisfying this objective prong, the patentee must also show that the infringer knew or should have known of this objectively high risk.

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010) (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)); *see also Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990) (noting a knowledge requirement for

14

willful infringement because "a party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge"). In accordance with this definition, willful infringement differs from direct infringement discussed above, the latter of which only involves "without authority mak[ing], us[ing], offer[ing] to sell, or sell[ing] any patented invention, within the United States . . . during the term of the patent therefor," without regard for scienter. 35 U.S.C. § 271(a); see also Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1310 (Fed. Cir. 2005) (same). Because Form 18 measures "only the sufficiency of allegations of *direct* infringement," Bill of Lading, 681 F.3d at 1336 (emphasis added), the Court finds that the Form does not apply to the separate willful infringement claims, and that a Motion to Dismiss these latter claims must be analyzed under Twombly and Iqbal, as the parties have analyzed it in their respective briefs.[5]

Under Twombly and Iqbal a Complaint must allege "more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950. However, on the issue of pre-suit

---

[5] The Court recognizes "a lack of complete uniformity in recent district court authority addressing willful infringement claims in light of Twombly and Iqbal." Sony Corp. v. LG Elecs. USA, Inc., 768 F. Supp. 2d 1058, 1064 (C.D. Cal. 2011) (internal quotation marks omitted). Nonetheless, it finds that applying the more stringent Twombly and Iqbal standards to willful infringement claims best accords with the logic of Federal Circuit precedent, which only applies different standards when a Form directly applies. See cases cited p. 13, supra. Other district courts that have applied Twombly and Iqbal to willful infringement claims include Fairchild Semiconductor Corp. v. Power Integrations, Inc., 935 F. Supp. 2d 772, 775-76, 778-79 (D. Del. 2013) (applying heightened pleading standards to willful infringement and Form 18 to direct infringement); Walker Digital, LLC v. Facebook, Inc., 852 F. Supp. 2d 559, 562-63, 567-68 (D. Del. 2012) (same); MONEC Holding AG v. Motorola Mobility, Inc., 897 F. Supp. 2d 225, 229, 235-36 (D. Del. 2012) (applying heightened pleading standard to willful infringement, but not addressing direct infringement, in a Report and Recommendation adopted by the District Court); Avocet Sports Tech., Inc. v. Garm Int'l, Inc., 2012 WL 1030031, at *2-4 (N.D. Cal. 2012) (applying heightened pleading standard to *both* direct and willful infringement); IPVenture, Inc. v. Cellco P'ship, 2011 WL 207978, at *2-3 (N.D. Cal. 2011) (applying heightened pleading standard to willful infringement, but not addressing direct infringement).

15

knowledge, the only facts that InterMetro alleges is that it and its predecessors had litigated their ownership of these patents in previous years, that this litigation was discussed in press releases and in an Atlanta Business Chronicle article, and that Intermetro asserted its ownership in letter to third parties (who are not alleged to include any of the Defendants). See generally Section II, supra. But while the relevant decision-makers at Capsa and Howard could *possibly* have been aware of this public information, there is no reason to conclude, on the face of the allegations themselves, that they actually were. In other words, InterMetro's pleadings represent a classic example of pleading "mere possibility," not the required "plausibility." See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting Twombly, 550 U.S. at 557, 127 S. Ct. at 1966). While InterMetro is not required to know and plead the Defendants' exact state of mind, it nonetheless has an obligation to allege facts from which the Court could infer the plausibility of its allegations. It has not done so.

By the same token, there are no factual allegations to indicate that Capsa or Howard "acted despite an objectively high likelihood that [their] actions constituted infringement of a valid patent." Seagate, 497 F.3d at 1371. For the reasons just stated, the facts that InterMetro alleges are not even sufficient to indicate that the Defendants had knowledge of the asserted patents, much less that they acted in spite of an objectively high likelihood of

16

infringement.[6]

Therefore, the Court will dismiss the claims of willful infringement against Capsa and Howard. As above, however, it will allow InterMetro leave to amend so that it may submit an amended complaint that complies with the pleading standards set forth in *Twombly* and *Iqbal*.

### c. Interrelationship Among the Three Complaints

Finally, the Court notes that, despite the fact that the Enovate Motion to Dismiss asserts different grounds from the Capsa and Howard Motions, the Complaints filed against each Defendant are nearly identical in all relevant legal respects. Because the Court will not *sua sponte* dismiss each Complaint on grounds different than those asserted in each respective Defendant's Motion, it will only dismiss the direct and indirect infringement claims against Enovate and the willful infringement claims against Capsa and Howard. Nonetheless, because all the arguments addressed in this Opinion are equally applicable to all three Defendants, InterMetro is hereby put on notice that an amended complaint which does not correct all defects cited in this Opinion, whether that complaint alleges such

---

[6] InterMetro's argument that the case of *Mitutoyo Corp. v. Central Purchasing, LLC*, 499 F.3d 1284, 1290 (Fed. Cir. 2007), does not require a plaintiff to plead objective recklessness is unpersuasive. All that *Mitutoyo* holds is that the factual details actually alleged in its own plaintiff's complaint were "more than sufficient to meet the requirements under Rule 8(a)(2) for pleading a willful infringement claim." *Mitutoyo*, 499 F.3d at 1290. The *Mitutoyo* decision was also issued shortly after *Twombly* and before *Iqbal*. Concomitantly, it is based on cases which it characterizes as only requiring notice pleading, not the heightened *Twombly-Iqbal* standards subsequently developed. *See id.* (citing *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007); *Ferguson Beauregard/Logic Controls v. Mega Sys., Inc.*, 350 F.3d 1327, 1343 (Fed Cir. 2003)). Accordingly, this Court finds no basis to conclude that *Mitutoyo* overrides the Supreme Court's otherwise applicable pleading standards.

17

uncorrected defects against a Defendant who originally challenged them in the instant Motions or not, will be subject to dismissal for the reasons stated in this Opinion. Moreover, since InterMetro has been put on notice of these defects, such dismissal, if affected, may be made with prejudice.

## V. Conclusion

For the reasons discussed above, Capsa, Enovate, and Howard's Motions to Dismiss (3:13-CV-02853, Doc. 33; 3:13-CV-02854, Doc. 35; and 3:13-CV-02856, Doc. 29, respectively) are **GRANTED**. Separate Orders follow.

Robert D. Mariani
United States District Judge