## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **INTERMETRO INDUSTRIES CORP.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **3:13-CV-02854** |
| | : | **(JUDGE MARIANI)** |
| **ENOVATE MEDICAL, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

*FILED*
*SCRANTON*
*FEB - 5 2016*
*PER* _____
*DEPUTY CLERK*

### MEMORANDUM OPINION

### I.    Introduction

Presently before the Court is Plaintiff's Motion for Leave to File a Second Amended Complaint. For the reasons that follow, the Court will grant the Motion, subject to the limitations in this Opinion.

### II.    Procedural History

Plaintiff filed its first Complaint in this action on November 22, 2013, alleging violations of its patent claims in certain mobile medical point-of-care carts. (*See* Compl., Doc. 1.) On September 30, 2014, this Court granted Motions to Dismiss by Defendant Enovate Medical, LLC and by other similarly-situated Defendants in related cases. (*See, e.g.*, Order, Sep. 30, 2014, Doc. 52.) Our Omnibus Opinion granting these Motions dismissed Plaintiff's Complaint on the grounds it did not contain sufficient factual allegations to state claims for direct, indirect, or willful infringement of its patents. (*See* Omnibus Mem. Op., Sep. 30, 2014, Doc. 51, at 10-17.) In particular, the Court's Opinion held that Plaintiff

did not adequately plead Enovate's notice of the alleged infringements. (*See, e.g., id.* at 12.) Our Order allowed Plaintiff fourteen days to submit an amended complaint that cured the defects cited in the Opinion. (*See* Doc. 52 at ¶ 3.)

Plaintiff responded by filing an Amended Complaint (Doc. 55) that increased the number of allegations from 131 to 328, and was accompanied by 29 exhibits totaling 849 pages. Defendant moved to dismiss the Amended Complaint on October 31, 2014. (*See* Mot. to Dismiss Am. Compl., Doc. 56.) In late 2015, before the Court had ruled on the second Motion to Dismiss, Plaintiff moved for leave to file a Second Amended Complaint. Following some delays arising out of procedural complexities related to the use of confidential information in the pleadings, that Motion to Amend (Doc. 121) is now ripe for resolution. It again seeks to expand the Complaint, this time to 458 allegations, along with 37 exhibits totaling 890 pages. The new allegations fall primarily into the following two categories:

1. Factual allegations related to Enovate's actual knowledge of certain patents (¶¶ 32-107, 116-118, 130, 133-35, 150, 153-55, 176-78, 190, 193-95, 210, 213-15, 236-38, 253-55, 273-75, 295-97, 312-14, 332-34, 355-57, 372-74, 392-94, 411-13, 428-30, 448-50); and

2. Asserted violations of 35 U.S.C. § 271(f) in addition to the already alleged violations of section 271 (¶¶ 119, 179, 239, 298, 358, 414).

## III.   Standard of Review

A party may amend its pleading with leave of court. The Court should "freely give" such leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has described this rule as follows:

> [Rule 15(a)(2)'s] mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 222 (1962) (internal citations omitted); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility."). The Third Circuit has "consistently recognized, however, that 'prejudice to the non-moving party is the touchstone for the denial of an amendment.'" *Id.* (quoting *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)).

## IV.   Analysis

In light of the foregoing standards, the Court finds that leave to amend is appropriate here. A significant number of the new allegations plead that Enovate knew about the patents at issue in this case well before Intermetro initiated suit. These allegations directly relate to issues currently in dispute between the parties: Enovate's pending Motion to

Dismiss seeks dismissal of Intermetro's Direct, Indirect, and Willful Infringement claims in large part on the basis that the First Amended Complaint does not adequately allege Enovate's presuit knowledge of the patents. (*See, e.g.*, Def.'s Br. in Supp. of Mot. to Dismiss, Doc. 57, at 5.) Plaintiff represents that new information giving rise to the new allegations first came to light during the depositions of Enovate employees in the summer and fall of 2015, shortly before it filed its first Motion to Amend the Complaint. (*See* Pl.'s Br. in Supp. of Mot. for Leave to Amend, Doc. 122, at 7.) Discovery on these issues was at the time and still is ongoing, and will continue until ninety days after this Court issues its Claim Construction Order. (*See* Stip. Am. Scheduling Order, May 8, 2014, Doc. 50, at ¶ 11.) As such, there is nothing facially unreasonable about Plaintiff's attempts to amend its Complaint to add new allegations pertaining to disputed issues that were uncovered during the permitted period of discovery.

Nonetheless, Enovate makes several arguments attempting to show that Intermetro's proposed amendments should be rejected under *Foman*, *supra*. We consider these below.[1]

---

[1] The Court is mindful that the analysis that follows does not address the impact or effect of *Addiction & Detoxification Institute, LLC v. Carpenter*, 620 Fed. App'x 934 (Fed. Cir. 2015) on the issues presented in Plaintiff's Motion for Leave to File a Second Amended Complaint or on those same issues in Defendant's Motion to Dismiss the First Amended Complaint. (*Cf.* Doc. 122 at 5-6 (raising *Addiction* as it pertains to the sufficiency of the pleadings in this case).) However, the Court is aware of *Addiction*'s holding that "[p]re-filing notice . . . is not required to bring a suit for direct infringement" as well as its additional observation that "[t]here is no rule, statute, or appellate case suggesting that pre-filing notice is required before bringing suit." *Addiction*, 620 Fed. App'x at 937. Because *Addiction* was not decided until July 21, 2015 and is silent with regard to its application to matters pending before its issuance where a plaintiff's complaint of direct infringement has been challenged on the basis that it does not sufficiently allege pre-filing notice, we have addressed Plaintiff's Motion for Leave to File a Second Amended Complaint and

### a. Undue Delay

First, Enovate argues that Intermetro engaged in undue delay by waiting until October 2015 to first request leave to file a Second Amended Complaint. (*See* Def.'s Br. in Opp. to Mot. for Leave to Amend, Doc. 129, at 4.)

We note that "[t]he passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). But here, Enovate's arguments for undue delay concern almost exclusively the mere passage of time. (*See* Doc. 129 at 4-6.) That is, Enovate points out that, while this Court gave Intermetro until October 14, 2014 to file an Amended Complaint that cured the defects cited in our Omnibus Opinion granting Defendants' Motions to Dismiss the original Complaint, it was not until the summer and fall of 2015 that Intermetro discovered the information it now seeks to add to the Complaint. (*Id.* at 5.)

While this delay may be unfortunate, there is nothing "undue" about it. As noted above, all discovery has been conducted within the stipulated discovery period. Because Intermetro had the right under our May 8, 2014 Order to conduct the discovery mentioned in its Motion, it cannot now be penalized for relying on that discovery to amend its pleadings.

---

Defendant's opposition thereto on the principal arguments made by the Defendant in its submissions to the Court. However, we see no inconsistency between our determination that Plaintiff should be granted leave to file its Second Amended Complaint and the holding in *Addiction*.

Moreover, even if we assume that Intermetro's delay was excessive, Enovate has not

shown that it has been unfairly burdened by the delay. While granting the amendment may

cause the litigation to continue longer than it otherwise would, this does not prejudice

Enovate, though the prospect of the litigation continuing for a longer period of time does

exist. But merely temporal "prejudice" is not sufficient to overcome our directive to "freely

grant" amendments.

### b.  Failure to State a Claim

Next, Enovate argues that leave to amend would be futile because the proposed

Complaint (i) does not adequately plead a claim of induced or contributory infringement and

(ii) does not allege facts showing that Enovate had knowledge of the '999, '866, '691, and

'176 patents (Counts III – VI). (*See* Doc. 129 at 7-14.)

A Motion for Leave to Amend may be denied on grounds of "futility" if "the complaint,

as amended, would fail to state a claim upon which relief could be granted." *Shane v.

Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing *In re Burlington Coat Factory Sec. Litig.*,

114 F.3d 1410, 1434 (3d Cir. 1997)). "In assessing 'futility,' the District Court applies the

same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (citing *Burlington*,

114 F.3d at 1434). The 12(b)(6) standard is as follows:

> A complaint must be dismissed under Federal Rule of Civil Procedure
> 12(b)(6) if it does not allege "enough facts to state a claim to relief that is
> plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.
> Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when
> the plaintiff pleads factual content that allows the court to draw the reasonable

6

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Rink v. Northeastern Educational Intermediate Unit 19*, Civ. No. 14-2154, 2015 WL 9026241, at *2-3 (M.D. Pa. Dec. 15, 2015).

Applying these standards, the Court does not find that the proposed Second Amended Complaint fails to state a claim on either of the grounds that Enovate alleges.

### i.   Indirect (Induced and Contributory) Infringement

The Patent Act provides that "[w]hoever actively induces infringement of a patent

shall be liable as an infringer," 35 U.S.C. § 271(b), and further that

> [w]hoever offers to sell or sells within the United States or imports into the
> United States a component of a patented machine, manufacture, combination
> or composition, or a material or apparatus for use in practicing a patented
> process, constituting a material part of the invention, knowing the same to be
> especially made or especially adapted for use in an infringement of such
> patent, and not a staple article or commodity of commerce suitable for
> substantial noninfringing use, shall be liable as a contributory infringer,

id. at § 271(c).

The elements of contributory and induced infringement are substantially the same.

Under section 271(b), "liability for inducing infringement attaches only if the defendant knew

of the patent and that 'the induced acts constitute patent infringement.'" Commil USA, LLC

v. Cisco Sys., Inc., ___ U.S. ___, 135 S. Ct. 1920, 1926, 191 L. Ed. 2d 883 (2015) (quoting

Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 131 S. Ct. 2060, 2068, 179 L. Ed.

2d 1167 (2011)). Likewise, contributory infringement under section 271(c) "requires

knowledge of the patent in suit and knowledge of patent infringement." Id. (citing Aro Mfg.

Co. v. Convertible Top Replacement Co., 377 U.S. 476, 488, 84 S. Ct. 1526, 1533, 12 L.

Ed. 2d 457 (1964)). The third party infringement referenced in these sections is defined as

"[m]ak[ing], us[ing], offer[ing] to sell, or sell[ing] any patented invention within the United

States or import[ing] into the United States any patented invention during the term of the

patent therefore." 35 U.S.C. § 271(a); see also Global-Tech, 131 S. Ct. at 2065 n.2 ("Direct

infringement has long been understood to require no more than the unauthorized use of a patented invention.") (collecting authorities).

Here, the proposed Second Amended Complaint adds 75 new factual allegations related precisely to Enovate's "specific pre-suit knowledge" of at least the '220 and '178 patents. (*See* Proposed Second Am. Compl. at ¶¶ 33-107.)[2] The new allegations discuss how Defendant Enovate Medical, LLC was formed, and allege that various representatives and decision-makers in the Defendant's predecessor-in-interest actually knew about patent infringement claims regarding some of the patents at issue in this case when such claims were brought against other alleged infringers. The new allegations further allege that decision-makers within Defendant Enovate possessed documents describing the product specifications of some of the patents at issue in this case. Though these allegations do not cover all of the patents in suit, other allegations aver upon information and belief that, during various mergers that led to the creation of Defendant Enovate Medical, the parties in interest would have conducted a reasonable due diligence investigation that would have uncovered Intermetro's patents. These averments are supported by the facts that the relevant parties understood that patents existed in this industry and knew about ongoing litigation about similar patents—averments which are supported by statements of Enovate representatives claiming that they knew about the existence of patents in this field, evaluated some, and developed strategies to avoid certain infringements.

---

[2] These allegations are redacted in the publicly-filed documents. Accordingly, we will discuss these and any other redacted allegations only in general terms.

These allegations do not conclusively establish that Enovate Medical knew about each of the six patents at issue in this litigation. But, for present purposes, they are certainly sufficient to allow us to reasonably infer at the pleading stage that Enovate did in fact have knowledge of each of the patents in suit.

The same can be said of the next element of contributory and induced infringement: that Enovate knew that it induced or contributed to a third party's patent infringement. The proposed Complaint alleges, with respect to each patent, that Enovate makes, uses, offers for sale, and sells

> without Intermetro's authority, point-of-care medical carts with knowledge of [each of the asserted patents] and its claims; knowing that others, including customers and users of its point-of-care medical carts, will complete the assembly of and/or use the carts in an infringing manner; knowing that its point-of-care medical carts are a material part of the invention claimed in [each Intermetro] patent; knowing that its point-of-care medical carts are especially made or especially adapted for use in an infringement of [each] patent; and knowing that its point-of-care medical carts are not staple articles or commodities of commerce that are suitable for substantial non-infringing use.

(Proposed Second Am. Compl. at ¶¶ 119; 179; 239; 298; 358; 414.) The proposed Complaint then gives several examples of Enovate's alleged conduct: namely, that Enovate makes and sells infringing products that its customers further assemble—including by adding a computer to the cart—in violation of the patents. (*Id.* at ¶¶ 120-21; 180-81; 240-41; 299-300; 359-60; 415-16.) Moreover, Enovate allegedly extolls the benefits of its infringing products to third party customers and provides those customers with instruction on how to integrate computing devices and their accessories into the infringing carts. (*Id.* at ¶¶ 124-

129; 184-89; 244-249; 303-08; 363-68; 419-24.) Finally, in order to show that the computerless point-of-care carts are "especially made or especially adapted for use in an infringement of [Intermetro's] patent," and are "not a staple article or commodity of commerce suitable for substantial noninfringing use," *see* 35 U.S.C. § 271(c), Plaintiff provides allegations that Enovate's carts "include each and every element" of the asserted patents, except for the computer device and/or display. But the allegations then go on to specify that the carts are not intended to be used without a computer, and that Enovate instructs customers on how to install one. (*See id.* at ¶¶ 143-149; 203-09; 263-69; 322-28; 382-88; 438-44.) Clearly, these alleged actions qualify as "inducement" or "contribution" insofar as they show that Enovate actively marketed components of infringing products to consumers and aided the consumers in adding further material parts to these infringing products and putting them to use. Intermetro alleges repeatedly throughout the proposed Complaint that the products being sold had no noninfringing use.

Because the Complaint alleges that Enovate knew about the patents and knew—or as the seller of the goods, at the very least expected and intended—that the customers would "use" the infringing products sold, *cf.* 35 U.S.C. § 271(a), then the proposed Second Amended Complaint adequately pleads causes of action for Induced and Contributory Infringement.

*ii. Lack of Allegations of Knowledge as to the Latter Four Patents in Suit*

Enovate further argues that the proposed Second Amended Complaint contains insufficient allegations that Enovate had presuit knowledge of the '999, '866, '691, and '176 patents (Counts III – VI). (Doc. 129 at 13.)

The Court disagrees. We already alluded to this issue in our discussion of the 75 new allegations of actual knowledge on page 9 of this Opinion. We noted there that the proposed Complaint does not allege specific knowledge of every single patent. However, we found that Plaintiff had set forth sufficient factual allegations from which the Court can plausibly infer, at the pleading stage, that Enovate knew about each patent: primarily, through allegations of Enovate's general knowledge of the industry and its business practices of investigating competitors' patents. *See* p. 9, *supra.* At the pleading stage, a plaintiff must merely "plead factual content that allows the court to draw the reasonable *inference* that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). We do not require plaintiffs to set forth direct evidence to state a claim for relief. Intermetro's chain of inferences—which is itself supported by specific facts—is enough for us to infer at that Enovate's plausibly had knowledge of each of the patents, even when there is no direct evidence of actual knowledge. Thus, Plaintiff states a claims for the various types of infringement of the '999, '866, '691, and '176 patents.

### c. Short and Plain Statement

Next, Enovate argues that the proposed Complaint violates Federal Rule of Civil Procedure 8(a)'s requirement that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." (Doc. 129 at 15.)

The district courts have discretion under Rule 8 to dismiss a Complaint that is "unnecessarily complicated and verbose." *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703 (3d Cir. 1996); *see also Mobley v. Wetzel*, Civ. No. 14-35, 2015 WL 1511896, at *3 (M.D. Pa. Mar. 31, 2015) ("A lengthy complaint . . . can generally be dismissed for violating Rule 8 if it is also so rambling, unclear, or complicated so as to defy response.") (collecting cases).

While Intermetro's proposed Complaint is far longer than the average civil pleading, it is not the type of "rambling, unclear, or complicated" submission that courts have typically found to violate Rule 8. To the contrary, the proposed Complaint is clear, logical, and coherent, setting forth the facts and law on which it relies in a straightforward and easily comprehensible manner.

We are also mindful of the context behind Plaintiff's submission. This Court first dismissed Intermetro's original Complaint because its allegations were too sparse and conclusory. Plaintiff then filed the First Amended Complaint that sought to remedy these defects. Defendant again filed a Motion to Dismiss arguing that the new Complaint also failed to set forth sufficient allegations to state a claim. It would be ironic and possibly

capricious if, after these repeated assaults on Plaintiff's Complaints for failing to state a

claim, this Court then rebuked Intermetro's third attempt on the grounds that the new

Complaint is too long. Suffice it to say that the Second Amended Complaint is not so long

and complicated as to stray beyond the strictures of Rule 8.

### d. Pleadings Related to Withdrawn Patent Claims

On October 14, 2014, this Court approved an agreement between Intermetro and the

then-existing Defendants providing in part that "Intermetro shall reduce the number of

asserted claims against . . . Enovate Medical . . . not to exceed 35 claims across all patents

in suit." (See Order, Oct. 14, 2014, Doc. 54, at ¶ 1.) Enovate attaches an email to its Brief in

Opposition to Plaintiff's Motion for Leave to Amend in which Intermetro's attorney specifies

the 35 claims that Intermetro asserts, across the '220, '178, '999, '866, '691, and '796

patents. (See Def.'s Br. in Opp. to Mot. for Leave to Amend, Doc. 129, Ex. I.)[3] Nonetheless,

Enovate argues that the proposed Second Amended Complaint contains allegations of

infringement of 126 claims across these six patents. (Doc. 129 at 16 (citing Proposed

Second Am. Compl. at ¶¶ 112, 172, 231, 291, 350, 407).) It also argues (without citation or

further specification) that "hundreds of pages of exhibits" contain information on the patent

claims no longer asserted in this action. (Id.)[4] Enovate argues that these allegations and

---

[3] Defendant's filing is corroborated by an Exhibit to Intermetro's separate Claim Construction Brief, which lists the claims that Intermetro is asserting. (See Asserted Claims Against All Defs., Pl.'s Claim Constr. Br., Doc. 69-8.) Though the Claim Construction Brief refers to a wholly distinct issue, its claim chart precisely matches the claims in Defendant's Exhibit I to their Brief in Opposition to the instant Motion.
    [4] Defendant appears to be referencing Exhibits 19 through 29 of the Proposed Second Amended Complaint.

exhibits related to the 91 dropped claims are irrelevant, inadmissible, immaterial, and impertinent, and should therefore be stricken under Federal Rule of Civil Procedure 12(f). (See id. at 16-17.) Intermetro represents that it does not intend to pursue infringement claims for any but the 35 claims stipulated in the parties' agreement; nevertheless, it believes that the claim-chart exhibits are appropriately submitted because they show notice of infringement, or at least "an objectively high likelihood of infringement." (See Pl.'s Reply Br. in Supp. of Mot. for Leave to Amend, Doc. 135, at 13 & 14 n.6.)

Federal Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)." Krisa v. Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000) (quoting North Penn Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994)). "Motions to strike, however, are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." Id. (quoting North Penn, 859 F. Supp. at 158) (internal quotation marks omitted).

The allegations about which Enovate complains state that "[b]y way of example," Enovate committed direct infringement of a host of claims on each patent. (See Proposed Second Am. Compl. at ¶¶ 112, 172, 231, 291, 350, 407.) The issue becomes confused, however, because Intermetro refers to each of these sets of claims as "the Asserted

[Patent] Claims," even though each one (with the exception of paragraph 112) contains both asserted and unasserted claims. (*Compare id. with* Doc. 69-8.) Moreover, these claims are all asserted under the heading of "Direct Infringement," which, as discussed above, means "the unauthorized use of a patented invention." (*See* pp. 8-9, *supra*.) Whether Enovate infringed on other claims not asserted in this case has no bearing on whether it directly infringed on the other claims actually at issue. Thus, the Direct Infringement allegations about unasserted patent claims are immaterial to Plaintiff's claims. They also prejudice the Defendant and create confusion, insofar as their inclusion makes the Complaint unclear as to which claims for Direct Infringement are actually at issue in this case.[5] While the Court will grant Plaintiff's Motion for Leave to Amend, Plaintiff must strike the references to unasserted claims from paragraphs 172, 231, 291, 350, and 407 of its Second Amended Complaint.

The same reasoning does not apply to references to unasserted-claim charts in Plaintiff's Exhibits. As Intermetro argues, these charts may be relevant to establishing that Enovate had notice of infringement, insofar as the chart contain "readily understandable" information with "clear application to Enovate's products" (and which, presumably, was also accessible to Enovate). (*See* Doc. 135 at 13.) Knowledge of these other unasserted claims could, among other things, be relevant to establishing the knowledge component of

---

[5] It is relevant in this regard that, despite responding to each of Enovate's arguments in its Reply Brief, Intermetro offers no explanation therein as to how the allegations related to unasserted claims in paragraphs 112, 172, 231, 291, 350, and 407 are relevant. (*See generally* Doc. 135 at 12-14.)

Plaintiff's Induced and Contributory Infringement claims by inference. Because these Exhibits apply broadly to the Second Amended Complaint and do not, like the irrelevant allegations above, only focus on the Direct Infringement claim then their inclusion is permissible.

V.    **Conclusion**

For the foregoing reasons, Plaintiff's Motion for Leave to Amend Its Complaint (Doc. 121) is **GRANTED**, subject to the limitations in this Opinion. A separate Order follows.

Robert D. Mariani
United States District Judge