# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
# SCRANTON DIVISION

| | |
|---|---|
| INTERMETRO INDUSTRIES CORPORATION, a Delaware corporation, | ) ) ) ) Civil Action Group: 3:13-cv-02854-RDM ) |
| Plaintiff, | ) (Judge Robert D. Mariani) ) |
| v. | ) ) |
| ENOVATE MEDICAL, LLC, a Delaware limited liability company | ) ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF INTERMETRO INDUSTRIES CORPORATION'S
BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS ENOVATE'S COUNTERCLAIMS III and IV AND
ENOVATE'S THIRD AFFIRMATIVE DEFENSE
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS .....................................................................................2

III. QUESTION PRESENTED .....................................................................................3

IV. ARGUMENT ..........................................................................................................4

    A. Legal Framework ........................................................................................4

        1. Standard for Fed. R. Civ. P. 12(b)(6) ..............................................4

        2. Standard for Pleading "Inequitable Conduct" ................................4

    B. Enovate's Counterclaim III Fails to Satisfy the *Exergen* Standard ......6

        1. Jaco" and "Jaco Employees" Cannot, as a Matter of Law,
           Be an"Inventor" ...............................................................................6

        2. Counterclaim III Does Not Allege Plausible Facts That Support
           "Why" or "How" Any "Jaco Employee" Is an "Inventor" .........7

        3. Counterclaim III Does Not Allege Facts Sufficient to Support
           a Plausible Inference that the Named Inventors Had a *Specific
           Intent* to Deceive the Patent Office ..............................................9

    C. Enovate's Counterclaim IV Fails to Satisfy the *Exergen* Standard ....10

        1. Counterclaim IV Does Not Allege How the Purported Prior Art
           References Were "Material" To Patentability .........................11

        2. Counterclaim IV Does Not Allege Facts Sufficient to Plausibly
           Support an Inference that Flemig Had a *Specific Intent* to
           Deceive the Patent Office .......................................................12

V. CONCLUSION .....................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 173 L Ed. 2d 868 (2009) ......................................4

*Beech Aircraft Corp. v. EDO Corp.*,
   990 F.2d 1237 (Fed. Cir. 1993)............................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...................................4

*Burlington Indus., Inc. v. Dayco Corp.*,
   849 F.2d 1418 (Fed. Cir. 1988)............................................................................5

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ................................................................ 1, 3,5,9

*Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v.
Mega Sys., LLC*,
   350 F.3d 1327 (Fed. Cir. 2003) ...........................................................................5

*Fina Oil & Chem. Co., et al. v. Ewen, et al.*,
   123 F.3d 1466 (Fed. Cir. 1997)............................................................................7

*Leviton Mfg. Co., Inc. v. Universal Sec. Instruments, Inc.*,
   606 F.3d 1353 (Fed. Cir. 2010)............................................................................5

*MBO Labs. Inc. v. Becton, Dickinson & Co.*,
   602 F.3d 1306 (Fed. Cir. 2010) ...........................................................................7

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ................................................................................4

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) .......................................................................4,6


**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 2, 3, 4, 9

Fed. R. Civ. P. 8(a)(2) ............................................................................................ 4

Fed. R. Civ. P. 9(b) ...................................................................................... 1, 3, 5

## I.     INTRODUCTION

Enovate's Counterclaims III and IV (and Third Affirmative Defense) alleging inequitable conduct by the inventors of the patents-in-suit should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Enovate has failed to satisfy the specific pleading standards required by Fed. R. Civ. P. 9(b) and *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009). Enovate's inability to allege sufficient facts to support its inequitable conduct claims is particularly remarkable because Enovate has completed fact discovery of each of the original named inventors on the patents-in-suit and the "Jaco employees" whom Enovate alleges should have been named as co-inventors.

Under *Exergen,* a charge of inequitable conduct requires specific allegations of the who, what, where, when and how of the alleged misrepresentations or omissions to the Patent Office. Further, sufficient facts must be pled to plausibly support an inference that the inventors had the requisite scienter to support a charge of inequitable conduct, which requires that an inventor (i) "knew" of the withheld material information or of the falsity of the material misrepresentation, and (ii) withheld or misrepresented this information with a specific intent to deceive the Patent Office. *Id.*

With respect to Counterclaim III – which alleges that the named inventors of the patents-in-suit committed inequitable conduct by failing to identify "Jaco

1

employees" as co-inventors – Enovate's pleading fails to (i) identify which individual person(s) was allegedly a co-inventor, (ii) specify a significant contribution to conception of the claimed invention made by any "Jaco employee," and (iii) allege sufficient facts that would support a plausible inference that the named inventors had a specific intent to deceive the Patent Office. With respect to Counterclaim IV – which alleges that named inventor Flemig withheld material prior art from the Patent Office with intent to deceive – Enovate's pleading fails to (i) specify how and why the purported prior art references were "material" and (ii) allege sufficient facts that would support a plausible inference that Flemig had a specific intent to deceive the Patent Office.

## II.   STATEMENT OF FACTS

Plaintiff InterMetro Industries Corporation ("InterMetro") filed this case for patent infringement on November 22, 2013 against Defendant Enovate, Inc. ("Enovate"), as well as four other defendants who have now settled. After multiple motions to dismiss under Fed. R. Civ. P. 12(b)(6), Enovate filed an Answer and four Counterclaims on February 29, 2016. Notwithstanding Enovate's multiple motions to dismiss, fact discovery has been active throughout the case. Enovate has deposed each of the original named inventors on the patents-in-suit, as well as relevant third-parties from Jaco, Inc. (whom Enovate alleges to be a co-inventor).

Enovate's Counterclaims III and IV (and Third Affirmative Defense) allege

inequitable conduct against the original named inventors on the patents-in-suit. Counterclaim III alleges that "Jaco" jointly conceived of the claimed invention, and that the named inventors on the patents-in-suit committed inequitable conduct by intentionally failing to identify "Jaco" or "Jaco employees" as a co-inventor. Counterclaim IV alleges that named inventor Steve Flemig knew of three alleged prior art references – (i) Planar Display Solution's Clean Screen Workstation ("Planar"), (ii) Tremont Medical's PCT-PB and PCT-SC ("Tremont"), and (iii) Jaco's MLT 2001 and MPC 2001 mobile carts ("Jaco MLT 2001 and MPC 2001) – during the pendency of the patent application that became the '220 patent but did not disclose them to the Patent Office.  Counterclaim IV further alleges that the purported prior art references were "material" to patentability and that Flemig, by not disclosing them, intended to deceive the Patent Office.

### III.   QUESTION PRESENTED

Whether Enovate's Counterclaims III and IV (and Third Affirmative Defense), charging the named inventors of the patents-in-suit with inequitable conduct, should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) in view of the pleading requirements of Fed. R. Civ. P. 9(b) and *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1328-29 (Fed. Cir. 2009)?

InterMetro answers:  YES.

3

## IV.   ARGUMENT

### A. Legal Framework

#### 1.  Standard for Fed. R. Civ. P. 12(b)(6)

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept all [of the counterclaimant's] factual allegations as true, construe the complaint in the light most favorable to the [counterclaimant], and determine whether, under any reasonable reading of the complaint, the [counterclaimant] may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008). Fed. R. Civ. P. 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  A claim must allege sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), *see also, Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L Ed. 2d 868 (2009).

#### 2.  Standard for Pleading "Inequitable Conduct"

"Inequitable Conduct" is an equitable defense that, if proven, may render a patent unenforceable. *Therasense, Inc. v. Becton, Dickinson & Co.,* 649 F.3d 1276, 1285 (Fed. Cir. 2011).  To prevail on an inequitable conduct claim, an accused infringer must show that the patent applicant: (i) made an affirmative misrepresentation of material fact, failed to disclose material information, or

4

submitted false material information to the Patent Office, <u>and</u> (ii) had specific intent to deceive the Patent Office. *Leviton Mfg. Co., Inc. v. Universal Sec. Instruments, Inc.,* 606 F.3d 1353, 1358 (Fed. Cir. 2010). In recognition of the "plague" of unfounded and specious allegations of inequitable conduct in many patent cases,[1] inequitable conduct must be pled with particularity under the heightened pleading standard of Fed. R. Civ. P. 9(b). *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC,* 350 F.3d 1327, 1344 (Fed. Cir. 2003).

A charge of inequitable conduct under Fed. R. Civ. P. 9(b) requires identification of the specific who, what, when, where, and how of the alleged material misrepresentation or omission committed before the Patent Office. *Exergen Corp.* 575 F.3d at 1328-29 (Fed. Cir. 2009). Further, a pleading of inequitable conduct must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (i) knew of the withheld material information or of the falsity of the material misrepresentation, and (ii) withheld or misrepresented this information with a specific intent to

---

[1] *Burlington Indus., Inc. v. Dayco Corp.,* 849 F.2d 1418, 1422 (Fed. Cir. 1988) ("the habit of charging inequitable conduct in almost every major patent case has become an absolute plague."); See also, *Therasense,* 649 F.3d at 1289-1290 ("Left unfettered, the inequitable conduct doctrine has plagued not only the courts but also the entire patent system...The court now heightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public.").

deceive the Patent office. *Ibid.* Intent to deceive the Patent Office may <u>not</u> be inferred from nondisclosure of a reference solely because that reference was known and material; there must be some evidence to prove or support an inference that patentee made a deliberate decision to withhold the reference. *Therasense,* 649 F.3d at 1290.

### B. Enovate's Counterclaim III Fails to Satisfy the *Exergen* Standard

Enovate's Counterclaim III asserts inequitable conduct against the three original named inventors on the patents-in-suit – Messrs. Flemig, Clark and Jacobs – for allegedly failing to identify "Jaco" or "Jaco employees" as a co-inventor. Counterclaim III must be dismissed because it does not allege with the requisite specificity "who" is the alleged co-inventor and "how" or "why" any employee of Jaco should have been considered a "co-inventor."

#### 1. "Jaco" and "Jaco Employees" Cannot, as a Matter of Law, Be an "Inventor"

Enovate's Counterclaim III alleges that "Jaco" and "Jaco employees" played a role in the "conception and design" of the mobile computer cart underlying the patents-in-suit:

> 64. During the development of the "mobile computer workstation" claimed by the Patents-in-Suit, Jaco employees, including [Gary] Brayton and Henry Jost, communicated regularly by email, telephone, facsimile, and in person with LXE employees, including the Primary Inventors [Flemig,

6

> Clark and Jacobs] regarding the conception, design, and manufacture of a mobile computer cart.
>
> * * *
>
> 68. The Primary Inventors and Jaco jointly conceived, developed, designed, and reduced to practice the mobile computer cart that was the basis for the Provisional Application and for all the applications for all the Patents-in-Suit.
>
> * * *
>
> 73. None of the Primary Inventors disclosed to the United States Patent and Trademark Office the role of Jaco or its employees in the conception and design of "mobile clinical workstation" claimed by the application that matured into the '220 Patent.

But "Jaco" or "Jaco employees" cannot, as a matter of law, be "inventors." *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993); *see also MBO Labs. Inc. v. Becton, Dickinson & Co.*, 602 F.3d 1306, 1309 n. 1 (Fed. Cir. 2010) ("Individuals, not corporations, create inventions.") (*citing Beech*). Only individual persons, not companies, can be "inventors." *Id.* Therefore, Enovate has failed to allege with requisite specificity "who" is the alleged "co-inventor."

### 2. Counterclaim III Does Not Allege Plausible Facts That Support "Why" or "How" Any "Jaco Employee" Is an "Inventor"

A "co-inventor" is a person who "contribute[s] in some significant manner to the conception of the invention." *Fina Oil & Chem. Co., et al. v. Ewen, et al.*, 123 F.3d 1466, 1473 (Fed. Cir. 1997). The basic exercise of the normal skill expected of one skilled in the art, without an inventive act, does not make one a co-

7

inventor. *Ibid.* "[T]o be a joint inventor, an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention." *Ibid.* Enovate's Counterclaim III fails to allege "why" or "how" any Jaco employee is a "co-inventor" because it fails to specifically identify any substantial contribution to *conception* of the invention made by any "Jaco employee."

Counterclaim III alleges that "Jaco" or "Jaco employees" should have been named as "co-inventors" because the named inventors used the "base" portion of Jaco's existing MPC2001 mobile cart as the base platform for the claimed "mobile computer workstation":

> 65. The Primary Inventors used Jaco's mobile computer cart as the base platform for the alleged invention that became the "mobile computer workstation" claimed by the Patents-in-Suit.

But neither the patents-in-suit nor the prosecution of the underlying applications suggest or hint that the "base" portion of the claimed mobile computer workstation was novel by itself. The inventive aspects of the claimed mobile computer workstation reside in the novel and unobvious "tray" located above the base portion and the named inventors' combination and configuration of the claimed elements in a unique manner to create the mobile computer workstation. The specifications of the patents-in-suit flatly acknowledge that the "the chassis 14 may be a model MPC2001 manufactured by JACO, Inc. with the standard tray replaced

8

by the horizontal tray 12 shown in FIG. 1." '220 Patent, col. 8, line 66- col. 9, line 1. The fact that the named inventors started with the base portion of Jaco's existing MPC2001 product and integrated a novel tray portion and other elements to it does not constitute a significant contribution to the *conception* of the claimed invention by Jaco. Enovate does not allege that the "Jaco employees" contributed anything else to the conception of the invention, even though it has completed discovery of the "Jaco employees." Therefore, Enovate has failed to allege plausible facts that would support "why" or "how" any Jaco employee should have been listed as a "co-inventor" on the Patents-in-Suit.

### 3. Counterclaim III Does Not Allege Facts Sufficient to Support a Plausible Inference that the Named Inventors Had a *Specific Intent* to Deceive the Patent Office

To pass muster under Fed. R. Civ. P. 12(b)(6), a charge of inequitable conduct must allege "underlying facts from which a court may reasonably infer" that the purported misrepresentation was made with "a specific intent to deceive the PTO." *Exergen,* 575 F.3d at 1328-1329. Enovate's Counterclaim III fails to satisfy this requirement.

The only allegations of "specific intent" in Counterclaim III are superficial:

> 75. The Primary Inventors each knew that Jaco employees had participated in the conception, development, and reduction to practice of the "mobile computer cart" claimed by the application that matured into the '220 Patent.

9

> 76. By not disclosing as co-inventors any of Jaco's employees, the Primary Inventors intended to deceive the United States Patent and Trademark Office as to the inventorship of the "mobile clinical workstation" claimed by the application that matured into the '220 patent.

The only contribution alleged to have been made by "Jaco" to the claimed invention is the base portion, which was taken from Jaco's existing MPC2001 cart. As described above, there was nothing inventive about the base portion on its own, and the specification of the patents-in-suit acknowledge that the base of Jaco's MPC2001 product, which could form the base of the claimed cart in the patents-in-suit, already existed at the time of the invention. Enovate fails to allege any facts that would support an inference that the named inventors of the patents-in-suit believed that inclusion of the base portion of Jaco's already-existing MPC2001 product could constitute a "significant contribution to the conception of the claimed invention." Enovate has already deposed all of the named inventors. Therefore, Enovate has failed to allege with sufficient plausibility that the named inventors had specific intent to deceive the Patent Office.

### C. Enovate's Counterclaim IV Fails to Satisfy the *Exergen* Standard

Enovate's Counterclaim IV asserts inequitable conduct against named inventor Flemig for not disclosing allegedly material prior art references to the Patent Office. Counterclaim IV fails to satisfy the *Exergen* pleading standard because it does not allege (i) "how" the purported prior art references were

"material" to patentability, <u>and</u> (ii) facts sufficient to plausibly infer that Flemig had "specific intent" to deceive the Patent Office.

### 1. Counterclaim IV Does Not Allege How the Purported Prior Art References Were "Material" To Patentability

A charge of inequitable conduct for allegedly withholding material prior art from the Patent Office must explicitly plead that the purportedly withheld prior art references were "material" by, among other things, identifying (i) which claims, and to which limitation in those claims, the purportedly withheld references are relevant, and (ii) where in the references the material information is found. *Exergen,* 575 F.3d at 1329.  Enovate's Counterclaim IV does not include *any* allegations directed to "how" the allegedly withheld prior art references were "material."  In particular, Counterclaim IV does not point to which claims of the patents-in-suit the alleged prior art references are material, what was disclosed by the allegedly withheld prior art references that was not already disclosed in other references that were considered by the Examiner (i.e., why the purported prior art references were not "cumulative"), and where in the references the allegedly material information is found. *Id.,* at 1329.  Indeed, Enovate's Counterclaim IV cannot, as Enovate has failed to even include the purported prior art references on which it relies.  Therefore, Enovate's Counterclaim IV fails to plausibly plead that the allegedly withheld prior art references were "material" to patentability.

11

### 2. Counterclaim IV Does Not Allege Facts Sufficient to Plausibly Support an Inference that Flemig Had a *Specific Intent* to Deceive the Patent Office

Like Counterclaim III, the allegations of Counterclaim IV directed to "intent" are superficial:

> 100.  Flemig knew that there existed information material to patentability in addition to what was disclosed to the United States Patent and Trademark Office.
>
> 101.  By not disclosing all information known to be material to patentability, the Primary Inventors intended to deceive the United States Patent and Trademark Office as to the patentability of the "mobile clinical workstation" claimed by the application that matured into the '220 Patent.

Claim IV includes no other allegations related to Flemig's alleged knowledge of the materiality (if any) of any of the purported prior art references. Enovate's bare allegations of "knowledge" of materiality, without any supporting facts whatsoever, does not satisfy the requisite pleading requirements. *Exergen,* 575 F.3d at 1328-29 ("[A] pleading of inequitable conduct under Rule 9(b) <u>must include sufficient allegations of underlying facts</u> from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.") (emphasis added). Enovate has already deposed Mr. Flemig, and, accordingly, no

additional facts regarding the alleged intent will be developed.

## V. CONCLUSION

For the reasons set forth above, InterMetro respectfully requests that the Court grant its motion to dismiss Enovate's Counterclaims III and IV and Enovate's Third Affirmative Defense directed to alleged inequitable conduct.

Respectfully submitted,

By: /s/Glenn E. Forbis
Glenn E. Forbis (PA 263218, MI P52119)
George D. Moustakas (MI P41631)
Neal D. Sanborn (MI P75725)
**HARNESS DICKEY & PIERCE, P.L.C.**
5445 Corporate Drive, Suite 200
Troy, Michigan 48098
(248) 641-1600
(248) 641-0270 (Fax)
gforbis@hdp.com
gdmoustakas@hdp.com
nsanborn@hdp.com

and

Harvey Freedenberg (PA 23152)
Shawn Leppo (PA 94569)
**MCNEES WALLACE & NURICK LLC**
100 Pine Street, PO Box 1166
Harrisburg, PA 17108-1166
(717) 232-8000
(717) 237-5300 (Fax)
hfreeden@mwn.com

Dated: March 24, 2016          sleppo@mwn.com

## CERTIFICATE OF SERVICE

I hereby certify that on 24th day of March 2016, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: /s/Glenn E. Forbis
Glenn E. Forbis (PA 263218, MI P52119)
**HARNESS DICKEY & PIERCE, P.L.C.**
5445 Corporate Drive, Suite 200
Troy, Michigan 48098
(248) 641-1600 (Phone)
(248) 641-0270 (Fax)
gforbis@hdp.com

20434671.2