# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
# SCRANTON DIVISION

| | |
|---|---|
| INTERMETRO INDUSTRIES CORPORATION, a Delaware corporation, | ) ) ) ) Civil Action Group: 3:13-cv-02854-RDM |
| Plaintiff, | ) ) (Judge Robert D. Mariani) |
| v. | ) ) |
| ENOVATE MEDICAL, LLC, a Delaware limited liability company | ) ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF INTERMETRO INDUSTRIES CORPORATION'S
REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS ENOVATE'S COUNTERCLAIMS III and IV AND
ENOVATE'S THIRD AFFIRMATIVE DEFENSE
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# **TABLE OF CONTENTS**

I.  DISCUSSION ...................................................................................................1

A.  **Enovate's Counterclaim III Fails to Satisfy the *Exergen* Standard** .........1

    1.  "Jaco" and "Jaco Employees" Cannot, as a Matter of Law, Be an "Inventor" ...................................................................................1

    2.  Counterclaim III Fails to Plead "Why" or "How" Any "Jaco Employee" Is An "Inventor" ............................................................2

    3.  Enovate's Counterclaim III Does Not Allege Facts Sufficient to Support a Plausible Inference that the Primary Inventors Had a *Specific Intent* to Deceive the Patent Office .........................................4

B.  **Enovate's Counterclaim IV Fails to Satisfy the *Exergen* Standard** .........6

    1.  Counterclaim IV Does Not Allege How the Purported Prior Art References Were "Material" To Patentability......................................6

    2.  Counterclaim IV Does Not Allege Facts Sufficient to Plausibly Support an Inference that Flemig Had a *Specific Intent* to Deceive the Patent Office ................................................................................7

II. CONCLUSION ................................................................................................8

i

# **TABLE OF AUTHORITIES**

**Cases**
*Beach aircraft Corp. v. EDO Corp.*,
 990 F.2d 1237, 1248 (Fed. Cir. 1993) ....................................................................................1

*Caterpillar Inc. v. Sturman Indus., Inc.*,
 387 F.3d 1358, 1377 (Fed. Cir. 2004) ....................................................................................3

*Ethicon, Inc., et al., v. United States Surgical Corp.*,
 135 F.3d 1456, 1460 (Fed. Cir. 1998) .................................................................................2, 4

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
 575 F.3d 1312 (Fed. Cir. 2009)...................................................................................... 1, 5, 7

*Hess v. Advanced Cardiovascular Sys., Inc.*,
 106 F.3d 976, 980 (Fed. Cir. 1997) ........................................................................................2

*Nartron Corp. v. Schukra U.S.A., et al.*,
 558 F.3d 1352, 1356 (Fed. Cir. 2009) ....................................................................................3

**Rule**
Fed. R. Civ. P. 12(b)(6)........................................................................................... 4, 6, 7

**Statutue**
35 U.S.C. § 102……………………………………………………………………….3

## I.   DISCUSSION

### A. Enovate's Counterclaim III Fails to Satisfy the *Exergen* Standard

#### 1. "Jaco" and "Jaco Employees" Cannot, as a Matter of Law, Be an "Inventor"

Enovate does not dispute that "individuals, not corporations, create inventions." *Beach aircraft Corp. v. EDO Corp.,* 990 F.2d 1237, 1248 (Fed. Cir. 1993). Further, Enovate does not dispute that its Counterclaim III generally alleges that "Jaco" and "Jaco employees" are the ones who played a role in the "conception and design" of the claimed invention. See, e.g., ¶¶64, 68, 73 of Counterclaim III. Enovate nonetheless argues that its allegation that "Jaco employees, including [Gary] Brayton and Henry Jost, communicated regularly by email, telephone, facsimile, and in person with LXE employees, including the Primary Inventors, regarding the conception, design, and manufacture of a mobile computer cart" (Counterclaim III, ¶64) is sufficient to satisfy its pleading requirement under *Exergen.* See *Exergen Corp. v. Wal-Mart Stores, Inc.* 575 F.3d 1312 (Fed. Cir. 2009). But Enovate's allegation does not specifically allege that Brayton or Jost (or anyone else at Jaco) actually invented the features of the "base" portion of Jaco's MLT2001 and/or MPC2001 carts, which are the features that Enovate alleges Jaco "contributed" to the claimed invention. Enovate has already deposed both Brayton and Jost. Without specifically identifying "who" is an

1

alleged "co-inventor" – that is, by failing to identify who invented the claimed features of the "base" portion of Jaco's MLT2001 and MPC2001 carts – Enovate's Counterclaim III fails to state a claim under Fed. R. Civ. P. 12(b)(6).

### 2. Counterclaim III Fails to Plead "Why" or "How" Any "Jaco Employee" Is An "Inventor"

Enovate relies only on paragraphs 65, 70-72 and 88 of Counterclaim III as purportedly alleging "why" or "how" Jaco should be considered a co-inventor of the Patents-in-Suit. Those paragraphs allege that (i) the specification of the Patents-in-Suit state that the "base" portion of Jaco's MPC2001 can be used as the chassis for the mobile computer workstation of the Patents-in-Suit; and (ii) the claims of the Patents-in-Suit recite some elements that would read on the "base" portion of Jaco's MLT2001 and/or MPC2001 carts. Enovate's argument must fail because Enovate <u>admits</u> in its Counterclaims that <u>Jaco did not invent</u> any of the elements recited in the claims of the Patents-in-Suit that read on Jaco's MLT2001 and/or MPC2001 carts.

As a matter of law, a person who merely explains to the real inventors something that was already in the prior art does not qualify as a "co-inventor." *Ethicon, Inc., et al., v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) ("One who simply provides the inventor with well-known principles or explains the state of the art without ever having 'a firm and definite idea' of the claimed combination as a whole does not qualify as a joint inventor."), citing *Hess*

2

*v. Advanced Cardiovascular Sys., Inc.,* 106 F.3d 976, 980 (Fed. Cir. 1997); See also, *Caterpillar Inc. v. Sturman Indus., Inc.,* 387 F.3d 1358, 1377 (Fed. Cir. 2004) ("[A] person will not be a co-inventor if he or she does no more than explain to the real inventors concepts that are well known in the current state of the art."); *(Nartron Corp. v. Schukra U.S.A., et al.,* 558 F.3d 1352, 1356 (Fed. Cir. 2009). Here, Enovate's Counterclaim III alleges that Jaco contributed the "base" portion of the claimed invention, which is reflected in claim 2 of the '220 patent (for example) as including: (i) a "dolly assembly", a "vertical beam having a first end connected to the dolly assembly and a second end connected to the tray," and "means for altering the length of the vertical beam…" See, Enovate's Brief, p. 11. But Counterclaim III does <u>not</u> allege that anyone at Jaco actually <u>invented</u> these elements. To the contrary, Enovate itself contends that these elements were already in the prior art before 1997, the first date on which Enovate alleges Jaco introduced its MLT2001 and MPC2001 carts. See, Enovate's Counterclaim III, ¶¶55-57. Enovate specifically alleges that all of these elements were disclosed in at least the Dell patent in September 1996[1]:

> <u>Dell</u> discloses a dolly assembly (1:45-51 and 2:63-64).
>
> <u>Dell</u> discloses a vertical beam having a first end connected to

---

[1] The Dell patent matured from a patent application filed on September 12, 1996. Ex. A, U.S. Patent 5,806,943 (Dell, et al). Thus, the disclosures of Dell were "prior art" as of September 12, 1996. 35 U.S.C. § 102.

3

>  the dolly assembly and a second end connected to the tray (2:56-64).
>
>  Dell discloses means for altering the length of the vertical beam and maintaining the tray at a plurality of selectable distances from the dolly assembly (3:2-6).

Ex. B, Exhibit D to Enovate's Invalidity Contentions, incorporated by reference in Enovate's Counterclaims. (emphasis in original).

Thus, Enovate's Counterclaim III fails to state a claim because it only alleges that Jaco contributed elements from the "base" portion of its MLT2001 and/or MPC 2001 carts, but Enovate's Counterclaims concede that Jaco did not invent these elements. Enovate itself contends that they were already part of the prior art when Jaco introduced its MLT 2001 and/or MPC 2001 carts in 1997. Therefore, Enovate's Counterclaim III must be dismissed for at least this reason.[2]

### 3. Enovate's Counterclaim III Does Not Allege Facts Sufficient to Support a Plausible Inference that the Primary Inventors Had a *Specific Intent* to Deceive the Patent Office

To satisfy Fed. R. Civ. P. 12(b)(6), Enovate's Counterclaim III must allege

---

[2] Enovate's Counterclaim III also generally alleges that Jaco participated in telephone calls with the Primary Inventors and created drawings and built commercial prototypes of the Primary Inventors' mobile computer workstation. But reducing an invention to practice, after it has already been conceived by another, does not qualify as co-inventorship. *Ethicon,* 135 F.3d at 1460 ("[O]ne does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention … [O]ne of ordinary skill in the art who simply reduced the inventor's idea to practice is not necessarily a joint inventor, even if the specification discloses that embodiment to satisfy the best mode requirement.").

4

facts sufficient from which it could plausibly be inferred that the Primary Inventors had a "specific intent" to deceive the Patent Office. *Exergen,* 575 F.3d at 1328-1329. Enovate points out that Counterclaim III alleges in a conclusory fashion that the Primary Inventors "each knew that Jaco employees had participated in the conception, development and reduction to practice of the 'mobile computer cart'…" See, Enovate's Brief, p. 14. But Enovate does not allege underlying facts that would plausibly support that conclusion. Enovate relies on its allegations that the Primary Inventors: "(i) communicated regularly with Jaco employees Brayton and Jost by email, telephone, facsimile, and in person regarding the conception, design, and manufacture of a mobile computer cart; (ii) used Jaco's mobile computer cart as the base platform for the alleged invention that became the mobile computer workstation claimed by the Patents-in-Suit; (iii) filed the Provisional Application and prosecuted the '220 Patent without informing Jaco; and (iv) declared under oath that they were the true and exclusive inventors of the subject matter of the application that matured into the '220 Patent despite know about the roles and contributions of Brayton and Jost." See, Enovate's Brief, pp. 14-15. But none of these allegations plausibly support the Primary Inventors having a "specific intent" to deceive the Patent Office.

Jaco was a contract manufacturer who made prototypes (and, later, production models) of a commercial embodiment of the invented mobile computer

5

workstation.  As explained above, Jaco did not contribute anything to the "conception" of the invention.  At best, Jaco "contributed" features of the "base" portion of its MLT2001 and/or MPC2001 carts, which Enovate alleges were already known in the prior art in 1996.  Enovate does not allege that Jaco contributed anything else.

The allegations relied upon by Enovate in paragraphs 64, 65, 69 and 74 of Counterclaim III are entirely consistent with the Primary Inventors having a legitimate belief that they, and they alone, were the proper inventors of the Patents-in-Suit.  Indeed, there is no reason for an inventor to tell his contract manufacturer, who did not contribute to the conception of the invention, that he filed a patent application.  The allegations relied upon by Enovate do <u>not</u> plausibly support an inference that the Primary Inventors had a "specific intent" to deceive the Patent Office.  Therefore, this is an additional reason why Enovate's Counterclaim III fails to state a claim under Fed. R. Civ. P. 12(b)(6).

## B. Enovate's Counterclaim IV Fails to Satisfy the *Exergen* Standard

### 1. Counterclaim IV Does Not Allege How the Purported Prior Art References Were "Material" To Patentability

Enovate relies on its Invalidity Contentions (referenced in paragraphs 34 and 35 of Enovate's Counterclaim II) in support of its assertion that the Planar, Tremont and Jaco references were "material" to patentability of the Patents-in-Suit.

See, Enovate's Brief, pp. 17-18. But Enovate was required to plead "why" each of the Planar, Tremont and Jaco references were "material <u>and not cumulative</u>." *Exergen,* 575 F.3d at 1329 (emphasis added). Neither Counterclaim IV nor Enovate's Invalidity Contentions explain why the Planar, Tremont and Jaco references were <u>not cumulative</u> to the ten other prior art references that the Patent Examiner considered in connection with the '220 Patent (the first patent in the family) and/or the more than 100 prior art references that were ultimately considered by the Examiner throughout the prosecution of all of the Patents-in-Suit. See, Ex. C U.S. Patent 8,526,176 (Clark, et al). That is, Enovate's Counterclaim IV (including Enovate's Invalidity Contentions) fails to allege what features the Planar, Tremont and Jaco references disclosed that were not already disclosed by other prior art references that were, in fact, considered by the Patent Examiner.

Therefore, Enovate's Counterclaim IV fails to state a claim under Fed. R. Civ. P. 12(b)(6).

**2. Counterclaim IV Does Not Allege Facts Sufficient to Plausibly Support an Inference that Flemig Had a *Specific Intent* to Deceive the Patent Office**

Enovate argues that a reasonable inference can be drawn from its allegations that (i) Flemig was aware of the Planar, Tremont and Jaco products at the time his original patent application was filed; (ii) Flemig knew that the Planar, Tremont and

7

Jaco products were "material" to patentability; and (iii) Flemig did not disclose the Planar, Tremont and Jaco products (or literature referring to them) to the Patent Office. See, Enovate's Brief, p. 20, relying on ¶¶82-89, 91, 93, 95, 97-99 of Counterclaim IV. Only paragraph 100 of Counterclaim IV addresses Flemig's alleged knowledge of the "materiality" of the Planar, Tremont and Jaco products:

> 100. Flemig knew that there existed information material to patentability in addition to what was disclosed to the United States Patent and Trademark Office.

This conclusory allegation is unsupported by any underlying <u>factual</u> allegations from which an inference could be drawn that Flemig was actually aware of any alleged materiality of these references. As explained above, Enovate itself has not even alleged in Counterclaim IV that the Planar, Tremont and Jaco references disclose any feature that was not already considered by the Examiner. There is no alleged fact in Counterclaim IV that would explain why Flemig would believe that Planar, Tremont and/or Jaco would be material in 1997 or 1998, particularly where Enovate has not even alleged the basis for the materiality in its Counterclaims.

## II.  CONCLUSION

For the reasons set forth above, InterMetro respectfully requests that the Court grant its motion to dismiss Enovate's Counterclaims III and IV and Enovate's Third Affirmative Defense directed to alleged inequitable conduct.

                                    **Respectfully submitted,**

By: /s/Glenn E. Forbis
Glenn E. Forbis (PA 263218, MI P52119)
George D. Moustakas (MI P41631)
Neal D. Sanborn (MI P75725)
**HARNESS DICKEY & PIERCE, P.L.C.**
5445 Corporate Drive, Suite 200
Troy, Michigan 48098
(248) 641-1600
(248) 641-0270 (Fax)
gforbis@hdp.com
gdmoustakas@hdp.com
nsanborn@hdp.com

and

Harvey Freedenberg (PA 23152)
Shawn Leppo (PA 94569)
**MCNEES WALLACE & NURICK LLC**
100 Pine Street, PO Box 1166
Harrisburg, PA 17108-1166
(717) 232-8000
(717) 237-5300 (Fax)
hfreeden@mwn.com

Dated:  April 28, 2016       sleppo@mwn.com

9

## CERTIFICATE OF SERVICE

I hereby certify that on 28th day of April 2016, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: /s/Glenn E. Forbis
Glenn E. Forbis (PA 263218, MI P52119)
**HARNESS DICKEY & PIERCE, P.L.C.**
5445 Corporate Drive, Suite 200
Troy, Michigan 48098
(248) 641-1600 (Phone)
(248) 641-0270 (Fax)
gforbis@hdp.com

20524802.1