# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERMETRO INDUSTRIES CORP., | : |
| Plaintiff, | : |
| v. | : 3:13-CV-02854 |
| | : (JUDGE MARIANI) |
| ENOVATE MEDICAL, LLC, | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Defendant Enovate Medical, LLC's Motion to Stay the Case (Doc. 159). For the reasons that follow, the Court will deny the Motion.

### II. PROCEDURAL HISTORY

Plaintiff, InterMetro Industries Corporation ("InterMetro"), filed its first Complaint in this action on November 22, 2013, alleging violations of its patent claims in certain mobile medical point-of-care carts. (*See* Doc. 1). On September 30, 2014, this Court granted Motions to Dismiss by Defendant Enovate Medical, LLC ("Enovate") and by other similarly-situated Defendants in related cases. (*See, e.g.*, Doc. 52). Plaintiff responded by filing an Amended Complaint (Doc. 55) which Enovate moved to dismiss on October 31, 2014 (Doc. 56). In late 2015, before the Court had ruled on the second Motion to Dismiss, Plaintiff moved for leave to file a Second Amended Complaint. In February, 2016, the Court granted Plaintiff's Motion subject to certain limitations. (*See* Docs. 140, 141).

Plaintiff's Second Amended Complaint asserts claims against Enovate for infringement of 35 claims within the following six patents: 6,493,220 ("220"); 6,721,178 ("178"); 7,612,999 ("999"); 7,791,866 ("866"); 7,990,691 ("691"); 8,526,176 ("176"). (*See generally*, Doc. 142). Defendant answered Plaintiff's Second Amended Complaint in February, 2016 (Doc. 145) and asserted Counterclaims seeking a declaration of non-infringement of the patents at issue, a declaration of invalidity of the asserted claims by Plaintiff, and a declaration of unenforceability of the asserted patents for failure to disclose co-inventors and failure to disclose information material to patentability (*id.* at 40-59).

On May 11, 2016, an Administrative Patent Judge on the Patent Trial and Appeal Board ("PTAB") issued two decisions following *Inter Partes* Reviews, requested by Enovate, of certain claims contained in Patents 178 and 220. The Judge found that claims 27, 28, 88, 101, and 108 of U.S. Patent No. 6,721,178 B1 were unpatentable, as were claims 1 and 2 of U.S. Patent No. 6,493,220 B1.[1] (*See* Doc. 154; *Enovate Med., LLC v. InterMetro Indus. Corp.*, Case IPR2015-00300 (PTAB May 11, 2016); *Enovate Med., LLC v. InterMetro Indus. Corp.*, Case IPR2015-00301 (PTAB May 11, 2016)). On May 31, 2016, InterMetro filed notices of appeal of both decisions to the Federal Circuit (*see* Doc. 160, Ex. C, D) and the cases have been consolidated for purposes of the appeal.

---

[1] InterMetro's Second Amended Complaint does not allege that Enovate infringed on claim 1 of the 220 Patent. Therefore, only 6 of the 35 claims at issue in the present case were found to be unpatentable by the PTAB.

As a result of the Administrative Patent Judge's decisions, Enovate has moved to stay the above-captioned action in its entirety, pending resolution of InterMetro's appeals of the *Inter Partes* Review decisions.[2] (Doc. 159). InterMetro opposes Defendant's motion.

### III. STANDARD OF REVIEW

"The Supreme Court has long recognized that district courts have broad discretion to manage their dockets, including the power to grant a stay of proceedings." *Proctor & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 848-849 (Fed. Cir. 2008) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). As such, the Federal Circuit has "consistently recognized the inherent power of the district courts to grant a stay pending reexamination of a patent." *Id.*

In deciding whether to grant a stay in a patent case, Courts routinely consider three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y. 1999); *see also, Wonderland NurseryGoods Co., Ltd. v. Thorley Indus., LLC*, 858 F.Supp.2d 461, 463 (W.D. Pa. 2012). Courts therefore must perform a balancing test to determine whether the benefits of a stay outweigh the costs of the stay. *See e.g., Stryker Trauma S.A. v. Synthes (USA)*, 2008 WL

---

[2] Defendant's motion also requests that the Court postpone the *Markman* Hearing, which was scheduled to be held on July 25-26, 2016. Upon agreement by the parties and approval of the Court, the *Markman* hearing was cancelled by the Court on July 8, 2016 and will be rescheduled to a date that is at least 60 days after the Court's ruling on the present motion and InterMetro's Motion for Leave to File a Third Amended Complaint. (*See* Doc. 163).

877848, at *1 (D.N.J. 2008); *Wonderland NurseryGoods*, 858 F.Supp.2d at 462; *GPAC, Inc. v. D.W.W. Enter., Inc.*, 114 FRD 60, 66 (D.N.J. 1992). This analysis "looks to the totality of the circumstances" and the "inquiry is largely case specific." *SurfCast, Inc. v. Microsoft Corp.*, 2014 WL 6388489, at *1 (D. Maine 2014).

The party seeking the stay has the burden of establishing that a stay is appropriate in the district court case. *Landis v. N. Am. Co.*, 299 U.S. at 256-257.

### IV. ANALYSIS

The first factor that this Court will consider is whether a stay in this action would simplify the issues in question and the trial of the case.

Here, Enovate argues that an affirmance by the Circuit Court of the PTAB's decisions "will significantly simplify the rest of the case because the six claims held unpatentable are foundational claims upon which the remaining 29 patent claims asserted against Enovate Medical are built." (Doc. 160, at 7). Thus, Enovate asserts that should the Circuit affirm the *Inter Partes* Reviews, this will "not only remove the six claims from this action but will provide a basis for removing or substantially reducing the other 29 patent claims." (Doc. 160, at 8). InterMetro strongly disputes Enovate's characterization of the effect of the Circuit's decision regarding the 6 claims at issue on the remaining 29 claims (Doc. 164, at 5-10), asserting that regardless of the Circuit Court's decision, the 29 claims not before the Circuit "will remain valid and unscathed" (*id.* at 4).

Plaintiff argues that a stay would not simplify the issues for a number of reasons, including (1) because the Court would have to apply a higher standard when determining the validity of the remaining 29 claims than that which was applied by the PTAB to the six claims at issue (*see* Doc. 164, at 6); (2) because "PTAB's Decisions provide no insight as to how the prior art relied on by Enovate will be read against the 29 unaffected asserted claims after this Court performs" the claim construction under the high standard set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*id.* at 6-7); and (3) due to the heightened standard of proof that must be met here, in conjunction with the factual disputes and anticipated conflicting expert reports and testimony, "the ultimate conclusion at trial regarding the validity of the 29 unaffected asserted claims cannot be predicted by the Federal Circuit's" decision (*id.* at 7-9). Enovate rebuts the above arguments largely by pointing out that it intends on moving for summary judgment and that if the six claims are held to be unpatentable, this will be used as *res judicata* to establish that it has met its burden of proof as to obviousness and unpatentability, at least to a preponderance of the evidence and that the Circuit's decision will be relevant pursuant to Fed. R. Evid. 401 and 402 on summary judgment. (Doc. 165, at 9-10).

There is clearly an overlap of certain issues before this Court and the Federal Circuit. As even Plaintiff admits, if the Federal Circuit upholds the PTAB's decision, that decision "would remove those six claims from this case." (Doc. 164, at 10 n.3). However, although there would be some simplification, or even elimination, of certain issues, the Federal Circuit

is only examining six claims within Patents 178 and 220. This leaves four patents, and 29 claims, that are not directly at issue in the Federal Circuit appeal. Furthermore, although Defendant contends that the Circuit's decision with respect to the claims at issue in the Circuit Court case will affect the validity of the other patents and claims that are at issue in this case, and therefore have an impact on the current case, and summary judgment in particular, the Court does not view this impact as sufficiently substantial to justify a stay here, particularly given the number of disagreements among the parties with respect to the validity and patentability of the claims not at issue in the Circuit case.

Thus, although some of the issues in the present case may be affected, or even rendered moot, by the Federal Circuit's decision, a number of claims may not be affected by the Circuit's decision. As such, it appears that regardless of the Circuit's decision, a majority of the claims will still remain which necessitate that this case move forward. The parties' diametrically opposite views on the effect of the Circuit's decision render it unclear to what degree that decision will simplify the issues before this Court, as well as what issues may be affected. Because the patentability of only six out of 29 claims are presently before the Circuit, Plaintiff's position demonstrates that, regardless of Defendant's position otherwise, it will still be tasking this Court, and possibly a jury, with examining and analyzing, at minimum, 29 of the claims found within the various patents-in-suit.

The Court's opinion that awaiting the Circuit's decision will not sufficiently simplify the issues such as to justify a stay is further supported by the fact that it is highly probable that

by the time the Court and the parties are prepared to hold the *Markman* Hearing and the Court issues its Claim Construction Order, which would trigger the deadlines for fact discovery, expert discovery and expert reports, dispositive motions, and *Daubert* motions (*see* Doc. 50), the Federal Circuit will have issued rulings on both of Plaintiff's appeals.[3] In other words, the relatively brief time remaining for the resolution of the appeal before the Circuit may actually weigh in favor of denying the stay. The appeal will almost certainly be resolved well in advance of the close of all the aforementioned deadlines and the result of the appeal could be easily incorporated into the proceedings of this case while causing minimal disruption to the case's advancement. Thus, although the Court agrees with Defendant's assertion that any analysis from the Federal Circuit may provide guidance to this Court when addressing issues on summary judgment or at trial (Doc. 160, at 9), this Court will still be able to benefit from the Federal Circuit's analysis, despite a denial of a stay in this case.

The Court next turns to another factor that must be considered when determining whether a motion to stay should be granted: whether discovery is complete and whether a trial date has been scheduled.

Pursuant to the Amended Scheduling Order in this case, fact discovery must be completed 90 days after the issuance of the Court's Claim Construction Order, initial expert reports are due 120 days after the issuance of the Claim Construction Order, and rebuttal

---

[3] Both parties agree that Plaintiff's appeals to the Federal Circuit will be resolved approximately one year from its filing in May, 2016, i.e. by "mid-2017". (Doc. 160, at 2; 164, at 2, 15).

expert reports must be disclosed 60 days thereafter. Expert discovery must be completed 240 days after the issuance of the Court's Claims Construction Order, and dispositive motions and *Daubert* motions are due 275 days after the Order's issuance. (Doc. 50).

Enovate argues that the current stage of this litigation favors a stay because "[n]o trial date has been set, fact discovery is not over, expert discovery has not even begun, the *Markman* hearing has not been held and no *Markman* order has issued, InterMetro's motion to dismiss two counterclaims is still pending, and *Daubert* and summary judgment motions have not been filed." (Doc. 160, at 9-10).

A review of the filings in this action demonstrates that, in terms of what has been done and what still remains outstanding, including the holding of a *Markman* hearing and a Claim Construction Order by this Court, the completion of expert reports, and the filing and resolution of dispositive motions, this case is technically still at an early stage in the proceedings. However, when viewed as a whole, this case is not in such an early stage as Defendant claims. The case has been pending for over three years, and a significant amount of activity has taken place. This includes the Court ruling on Motions to Dismiss Plaintiff's Complaint, filed by Enovate and by other similarly-situated Defendants in related cases, the filing of another Motion to Dismiss by Enovate of Plaintiff's Amended Complaint, and Plaintiff's Motion for Leave to File a Second Amended Complaint which the Court granted subject to certain limitations. Also pending in this case is a partial Motion to Dismiss Enovate's Counterclaims and Affirmative Defense, filed by Plaintiff. The parties

have also filed detailed Claim Construction briefs (see e.g., Docs. 69, 71, 76, 78) and worked together to create a Joint Claim Construction Chart (Doc. 73). Further, the Court had scheduled a *Markman* hearing to be held almost one year ago, that was indefinitely postponed due to the filing of motions by both parties. Additionally, Plaintiff asserts that "the parties have [already] conducted extensive discovery, exchanged extensive contentions, and fully briefed their respective claim construction positions." (Doc. 164, at 16). Defendant also acknowledges that the parties "have been conducting paper discovery since early 2014" and that both parties have deposed a number of individuals. (Doc. 160, at 3).

Upon review of the motion practice in this case, the Opinions and Orders issued by the Court addressing the various motions and other case-related issues, and crediting Plaintiff and Defendant's statements with respect to the amount of discovery that they have already engaged in, it is evident that a significant amount of judicial resources as well as party-related resources, have already been consumed by the litigation of this action. In light of how long this case has been pending and the extensive litigation that has already taken place (including the 222 filings in this case), this case is arguably at a later stage in the proceedings than may initially appear, and InterMetro has been waiting for a significant period of time to have its infringement claims adjudicated.

Therefore, although a substantial amount of work still remains to be done in this case, it is equally true that this case has been progressing for several years and both parties, as well as the Court, have already expended a significant amount of time and

resources on moving this case towards a resolution. While there are persuasive arguments on both sides when assessing the current stage of this litigation to determine whether to grant a stay, the Court finds that, on balance, this factor does not support the implementation of a stay in this case.

Finally, the Court must consider whether a stay would unduly prejudice or present a clear tactical disadvantage to InterMetro, the non-moving party.

A delay as the result of the reexamination process does not, by itself, constitute undue prejudice. *CCP Sys. AG v. Samsung Elec. Corp.*, 2010 WL 5080570, at *3 (D.N.J. 2010) (citing *Photoflex Products, Inc. v. Circa 3 LLC,* 2006 U.S. Dist. LEXIS 37743, at *5 (N.D.Cal. 1996); *Everett Labs., Inc. v. River's Edge Pharms., LLC,* 2009 WL 4508584, at *4 (D.N.J. 2009)). However, "[t]he pendency of an appeal from the [*inter partes review*], and the possibility that the Federal Circuit may reverse the [U.S. Patent and Trademark Office] (and thereby simplify [the] litigation by, presumably, making it disappear), is not, in and of itself, a sufficient basis to make the patentee . . . continue to wait to enforce patent rights that it currently holds." *Zoll Med. Corp. v. Respironics, Inc.,* 2015 WL 4126741, at *1 (D.N.J. 2015).

InterMetro contends that granting Enovote's motion to stay prejudices Plaintiff because it "merely pushes the consequences of Enovate's infringement into the future" and lowers the value of the patents-in-suit as licensing assets. (Doc. 164, at 12). While there is little question that a stay does delay any consequences of Enovate's alleged infringement

10

and any recovery on the part of InterMetro, in light of the fact that Courts have repeatedly found that delay alone as the result of the reexamination process does not constitute undue prejudice, InterMetro's argument is not sufficient to establish undue prejudice to InterMetro. Furthermore, here, both parties agree that Plaintiff's appeals to the Federal Circuit will be resolved approximately one year from its filing in May, 2016, i.e. by April or May of 2017. (Doc. 160, at 2; 164, at 2, 15). At this time, that means that the parties expect a resolution of Plaintiff's appeal within the next two months. This further lowers any prejudice to InterMetro.[4]

However, conversely, the fact that the Circuit is expected to issue a ruling soon on InterMetro's appeal also prevents Enovate from asserting that it would suffer any hardship or inequity in being required to go forward. *See Landis v. N. Am. Co.*, 299 U.S. at 255 (the party moving for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else."); *see also, e.g., ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, 2012 WL 5599338 (D. Del. 2012). As previously noted, it is highly likely that by the time the Court and the parties are prepared to hold the *Markman* Hearing and the Court issues its Claim Construction Order, which would trigger the deadlines for fact discovery,

---

[4] The Court recognizes that at the time Enovate filed its Motion to Stay, and InterMetro responded, an expected ruling by the Federal Circuit was approximately 9 months away. While that period of time is more supportive of InterMetro's argument, it most likely still would not have been sufficient to establish *undue* prejudice.

11

expert discovery and expert reports, dispositive motions, and *Daubert* motions (*see* Doc. 50), the Federal Circuit will have issued a ruling on Plaintiff's consolidated appeals.

Enovate broadly argues that a stay in this case will not unduly prejudice Plaintiff or provide a tactical advantage to Enovate. Instead, Enovate attempts to place the blame for any delay that has already occurred on Plaintiff, arguing that InterMetro "waited years before filing this suit" and that Plaintiff "has not done anything to move this case along" and instead has "prolonged the case by amending its Complaint twice and now stating its intention to add another patent-in-suit." (Doc. 160, at 11-12). In turn, InterMetro blames Enovate's repeated "legally [and] factually unfounded" "serial motion practice" for the delay in this case. (Doc. 164, at 10-11). A review of the docket reveals that both parties have engaged in litigation tactics which, whether purposefully or not, have delayed this case's resolution. Attempting to blame each other for any such delays is a fruitless endeavor and the Court finds neither party's attempts persuasive in determining whether a stay would prejudice InterMetro or provide an advantage to Enovate.

Finally, where the parties are direct competitors, a stay is likely to prejudice the non-movant. *Wonderland NurseryGoods*, 858 F.Supp.2d at 464. However,

> it is not necessary that the parties be direct competitors for prejudice to inure to the patentee. A patent grants "to the patentee ... the right to exclude others from making, using, offering for sale, or selling the invention." 35 U.S.C. § 154 (2012). As one court has noted, "[t]he right to exclude, *even for a non-practicing entity,* may be the only way to fully vindicate the patentee's ownership in the patent." *BarTex [Research, LLC. v. FedEx Corp.,* 611 F.Supp.2d 647, 652 (E.D. Tx. 2009] (emphasis added) (citing *Acumed LLC v. Stryker Corp.,* 551 F.3d 1323, 1327-28 (Fed.Cir.2008)). If a non-practicing

12

> entity may overcome a stay based on the fact that its rights are not being vindicated, it is surely not critical that the parties be in direct competition.

*Id.*

Here, Enovate asserts that InterMetro and Enovate are no longer direct competitors because InterMetro sold its mobile medical computer cart business to another company, and only retained ownership of the patents-in-suit. (Doc. 160, at 12). InterMetro states that it "actively licenses products covered by the patents-in-suit" but admits that it is not presently a direct competitor of Enovate. (Doc. 164, at 15). Although the Court recognizes that the parties are not direct competitors nor is InterMetro a non-practicing entity, the fundamental underlying principle remains the same, namely that a patentee has the right to vindicate its ownership and preserve whatever rights to which it may be entitled as the patent-holder. Therefore, although the impact of a stay on InterMetro would not be as severe as if the parties were direct competitors, this consideration demonstrates at least some prejudice to InterMetro, albeit not undue prejudice.

As previously noted, this case has already been pending for over three years, a significant amount of resources have been expended on the case and yet a significant amount of work remains to reach an ultimate resolution in this action. Although the Court is not willing to attribute ill-motives to either party for any delays, it is clear that granting Defendant's motion for a stay would further force this action to remain at its current stage for at least several more months, in addition to the time that the parties have already waited for

the appeal to the Circuit to be resolved. Furthermore, InterMetro must be allowed to fully litigate their asserted rights in a reasonable amount of time.

The Court therefore finds that because there is little evidence of undue prejudice to InterMetro should the Court grant a stay, and that it is unclear that Enovate will gain any tactical advantage, aside from the inherent advantage of having the case against it further delayed, the factor requiring a Court to determine whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party is neutral.

## V. CONCLUSION

Upon a review of the totality of the circumstances and the specific factual background of this case, and on balance of the factors that should be considered when determining whether to grant a stay, for the foregoing reasons, Defendant Enovate Medical, LLC's Motion to Stay the Case (Doc. 159) will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge